# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

SCHMITZ LAND CO., LLC., and
KIMBERLEE SCHMITZ,

        Plaintiffs,

        v.                           No. CV-2010-00578-WJ/DJS

RIO ARRIBA BOARD OF COUNTY
COMMISSIONERS, DANNY GARCIA
and RANDY MORFIN,

        Defendants.

### MEMORANDUM OPINION AND ORDER
### GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION,
### DENYING PLAINTIFFS' MOTION TO AMEND COMPLAINT,
### AND
### DENYING DEFENDANTS' MOTION FOR STAY AS MOOT

        THIS MATTER comes before the Court upon the following motions:

•     Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed January 13, 2011 (**Doc. 25**);

•     Plaintiffs' Motion for Leave to Amend Complaint, filed February 16, 2011 (**Doc. 34**); and

•     Defendants' Motion for Protective Order and Stay of Discovery Pending Resolution of the Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction, filed February 24, 2011 (**Doc. 38**).

        Having considered the parties' briefs and the applicable law, I find that Defendants'

Motion to Dismiss for Lack of Subject Matter Jurisdiction is well-taken and shall be granted,

Plaintiffs motion to amend is not well-taken and shall be denied, and that Defendants' motion for

a stay is rendered moot by the Court's findings regarding the first two motions.

**Background**

This case involves roads through contiguous ranch land owned by Plaintiffs. Rio Arriba County has claimed that certain of the roads on the ranch are county roads. Plaintiffs assert that Defendants have committed torts upon Plaintiffs while attempting to assert dominion and control over the roads. Plaintiffs seek to quiet title in the land or, alternatively to be compensated for the taking, and for damages arising out of the alleged torts. *See* Jt. Status Rep., Doc. 17. Defendants Morfin and Garcia are employees of Rio Arriba County.

The dispute between the parties has become personal. According to the complaint, from 1956 through 1989, Plaintiffs granted right-of-way easements through their property to various oil and gas production companies, as well as to the New Mexico State Highway and Transportation Department.  In March 2009, the Public Works Department of Rio Arriba County ("County") under the direction of Defendant Garcia, erected signage on what Plaintiffs allege were their private roads, marking these roads as "County Road 402" and "County Road 402 and County Road 405."  In June of 2009, the County performed grading work on these roads.  In July 2009, Plaintiffs placed signage designating the roads as private.

In August 2009, Defendant Morfin, under Defendant Garcia's direction, entered Plaintiffs' premises and removed the signage. Plaintiffs Kimberlee Schmitz saw Morfin removing the signs and placing them in the County truck he was driving.  Schmitz  requested that he give her the signs. In the sequence of events in the complaint, Morfin telephoned Garcia, refused to comply with Schmitz' request, and then "caused the truck he was driving to strike [Plaintiff] and pinned her between vehicle and the County truck." Schmitz sustained injuries to her arm as a result of being struck by the truck, was "treated by a nurse" and "given a prescription due to her injuries."

Plaintiffs filed an original complaint on June 16, 2010, which asserts claims to quiet title (Count I); violation of civil rights under 42 U.S.C. § 1983 (Count II); assault (Count III); battery (Count IV); trespass (Count V); and conversion (Count VI).  Plaintiffs base their assertion of federal jurisdiction on a an alleged violation of the Taking Clause of the Fifth Amendment, under 42 U.S.C. § 1983.  In their motion to dismiss, Defendants contend that there is no basis for federal jurisdiction because the sole federal claim in the complaint is not ripe for federal review.

While Defendants' motion to dismiss was pending, Plaintiffs filed a motion for leave to amend the complaint in order to more clearly state the claims included under § 1983. Defendants also seek a stay of all pretrial discovery pending this Court's resolution of the other two motions.

**Discussion**

This Court's subject matter jurisdiction must be established "as a threshold matter." *Ruhrgas Ag v. Marathon Oil Co., et al*., 526 U.S. 574 (1999) (citing *Steel Co. v. Citizens for a Better Environment*,  523 U.S. 83, 94 (1998).  The issue of ripeness also bears on a court's subject matter jurisdiction under the case or controversy clause of Article III.  *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495 (10th Cir. 1995). Ripeness is both a question of subject-matter jurisdiction under Article III of the United States Constitution and an integral component of takings and due-process claims under its Fifth and Fourteenth Amendments. *See Bateman v. City of West Bountiful*, 89 F.3d 704, 706 (10th Cir. 1996); *J.B. Ranch, Inc., v. Grand County*, 958 F.2d 306(10th Cir. 1992). The ripeness of Plaintiffs' takings and due-process claims may be questioned *sua sponte*, see *J.B. Ranch, Inc.,* 958 F.2d at 308, or by means of a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

Based on the Court's review of Defendants' motion to dismiss, the original complaint

3

and the proposed amended complaint, I have determined that Plaintiffs do not assert any viable basis for federal jurisdiction. The Court's analysis will first address the motion to dismiss based on the allegations and claims set forth in the original complaint, and then address whether dismissal is appropriate based on the proposed amended complaint as well.

**I.      There is No Federal Jurisdiction Based on the Original Complaint**

The only count in the original complaint which purports to allege a federal claim is Count III. In that count, Plaintiffs allege that Defendants have wrongfully asserted title and right to certain roads on their property, designated and labeled private roads as public property, and have failed to provide just compensation for such taking in violation of the Fifth Amendment to the United States Constitution and 42 U.S.C. §1983.

The Fifth Amendment does not prohibit the government from taking its citizens' property; "it merely prohibits the government from taking property without paying just compensation." *Miller v. Campbell County*, 945 F.2d 348, 352 (10th Cir.1991), *petition for cert. denied*, 502 U.S. 1096 (1991) (citing *Williamson Cty Reg. Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 195 (1985)). The Fifth Amendment does not require that just compensation be paid in advance of, or contemporaneously with, the taking. If a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until he has unsuccessfully attempted to obtain just compensation through the procedures provided by the State for obtaining such compensation, and has been denied just compensation. *Williamson*, 473 U.S. at 194. Consequently, a Fifth Amendment takings claim is not ripe until the property owner has attempted to obtain, and been denied, compensation using state procedures. *Id*; *see Miller*, 945 F.2d at 352.

This case is similar to the situation in *J.B. Ranch, Inc., v. Grand County*, 958 F.2d 306

(10th Cir. 1992).  Plaintiffs in that case alleged that the county made an unconstitutional taking under the Fifth Amendment without just compensation when it declared the ranch roads public. The Tenth Circuit found that the facts of that case "fit squarely within the analysis developed in just compensation cases" and that therefore the jurisdictional requirements applicable to Fifth Amendment takings claims applied.  *Id*. at 308.   In the instant case, Plaintiffs concede that they have not gone through the state procedure, and thus Count II does not provide a basis for federal jurisdiction. *See, e.g., Lohman Properties, LLC v. City of Las Cruces*, 2008 WL 5999791, *2 (D.N.M. 2008) ("Because New Mexico law provides for inverse-condemnation proceedings, the Plaintiffs' federal claim under § 1983 is not ripe until they have been through those proceedings"); *see also Alto Eldorado Partnership, Rancho Verano, LLC v. The County Of Santa Fe*,  2011 WL 913186, 2 (10th Cir. 2011) (compensation does not have to be contemporaneous with the taking, as long as there is an adequate provision for obtaining compensation that exists at the time of the taking) (citing *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194-95 (1985).[1]

     While they reluctantly concede that their takings claim does not provide a basis for federal jurisdiction, they contend that they have pled a quiet title claim in the alternative.  This argument makes no sense, and the Court agrees with Defendants that it actually undercuts any argument Plaintiffs might raise with regard to subject matter jurisdiction, because New Mexico's statutes relevant to a quiet title claim do not provide a basis for federal jurisdiction.[2]   Plaintiffs

---

     [1] Defendants filed a Notice of Supplemental Authority regarding the *Alto Eldorado Partnership* case.  *See* Doc. 46.

     [2] *See* NMSA § 38-3-1(D) ("when lands or any interest in lands are the object of any suit in whole or in part, the suit shall be brought in the county where the land or any portion of the land is situate"); NMSA § 42-6-1, et. ("an action to determine and quiet title of real property

also argue that New Mexico's inverse condemnation statute only applies to real property.  Since

they seek the return of personal property – the signage which they erected on the property – they

need not avail themselves of the state's inverse condemnation process.  This argument also fails.

First, the inverse condemnation statute appears to apply to the taking or damage "of any

property."  NMSA § 42A-1-29.  Second, even if the statute did apply only to real property, I do

not see how Defendants' removal of signage from Plaintiffs' property rises to the level of an

independent takings claim.  As Defendants point out, Plaintiffs may recover these signs as

consequential or special damages if they do succeed on their inverse condemnation claim.  *See,*

*e.g.*, *El Paso Elec. Co. v. Pinkerton*, 96 N.M. 473 (1981) (additional damages such as crop

destruction caused by construction of transmission lines was properly considered special or

consequential damages); NM-UJI 13-705 (jury instruction on damages relating to partial taking,

including the "reestablishment of . . . signs"); *Primetime Hospitality, Inc. v. City of Albuquerque*,

146 N.M. 1 (2009) ("the propriety of a particular element of damages in an inverse

condemnation case is determined by whether that measure provides just compensation for the

individualized taking").  Thus, Plaintiffs cannot establish a federal claim based either on an

alleged quiet title action or Defendants' removal of signage from their property.

      Like the plaintiffs in the *J.B. Ranch* case, Plaintiffs have not gone through the state

procedures in their quest for compensation for an unjust taking of their property.  As a result, the

original complaint fails to assert a basis for federal jurisdiction, and must be dismissed.  Plaintiff

urges the Court to overlook the jurisdictional defect in order for them to avoid having to file

---

may be brought in any county in which part of [the real property] lies"); NMSA § 42-6-2 ("the
plaintiff must file his complaint in the district court, setting forth the nature and extent of his
estate. . . and praying. . . that plaintiff's title thereto be forever quieted and set at rest").

multiple cases – one for inverse condemnation and another for federal claims.  The problem with

this idea is that Plaintiffs have alleged no federal claim at all in the complaint, and thus there is

no claim which can proceed in this Court, whether or not there are accompanying state claims.

*See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 502 (2006) (". . . when a federal court concludes that

it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety").  At

best, Plaintiffs could be permitted to amend the complaint, but as will be seen in the following

section, amending the complaint will not be of any help to Plaintiff in establishing a basis for

federal jurisdiction.

## II.    The Proposed Amended Complaint Does Not Assert Federal Claims

Plaintiffs believe that they have sufficiently pled multiple civil rights claims in the

proposed amended complaint. The grant or denial of leave to amend under Fed.R.Civ.P. 15(a) is

a matter within the discretion of the trial court.  *Zenith Radio Corp. v. Hazeltine Research, Inc.*,

401 U.S. 321, 330 (1971); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Although leave to amend

is generally freely granted, it will not be permitted where the proposed amendment will be futile,

or where the request is untimely and unduly prejudicial to the opposing part.  *Castleglen, Inc., et

al. v. R.T.C.*, 984 F.2d 1571 (10th Cir. 1993).

Counts I and II of the proposed amended complaint assert identical claims relating to

quiet title and takings as those which are contained in the original complaint. These do not

present issues which invoke federal jurisdiction for reasons previously stated.[3]  The proposed

_____

[3]  While Plaintiffs do not specifically argue that the takings claim should be considered a claim asserting a violation of due process, a due process claim would be subsumed within the analysis for a claim brought under the Takings Clause.  *Northern States Power Co. v. Federal Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004) (noting that the takings clause of the Fifth Amendment is incorporated by, and applied against the states through, the due process clause of the Fourteenth Amendment).  *See also J.B. Ranch*, 958 F.2d at 308 (claim of unconstitutional

amended complaint restates the same assault and battery claims (Counts III and IV) as are alleged in the original complaint, and are based on identical facts relating to Schmitz allegedly being hit by the truck driven by Morfin.  In an effort to recast these state law tort claims as federal due process claims, Plaintiffs add the following language to the assault and battery claims: "The County's and Morfin's conduct deprived Plaintiffs of their rights guaranteed by the Fifth Amendment to the United Constitution and is actionable under 42 U.S.C. 1983." Prop. Am. Compl., Doc. 34-1, ¶¶ 41 and 45.

However, despite the additional language specifying Counts III and IV as constitutional deprivations, Plaintiffs' assault and battery claims remain as state law tort claims.  Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred."  *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 811 (1994) (citation omitted); *see also Sampley v. Ruettgers*, 704 F.2d 491, 495, n.6 (10th Cir. 1983) (42 U.S.C. § 1983 is not a general tort statute but imposes liability only for rights secured by the Constitution and laws of the United States).  The facts as alleged by Plaintiffs for their assault and battery claims form the basis for state law tort claims, and not a Fourteenth Amendment due process claim.  In *Williams v. Berney*, 519 F.3d 1216 (10th Cir. 2008), a confrontation broke out between the defendant city license inspector and the plaintiff business owners regarding the owners' licensing ordinance.  According to the complaint, defendant "without provocation ... pushed, shoved and repeatedly struck. . . [one of the plaintiffs] . . .  both inside and outside the business premises." Id. at 21 ¶ 14.  One of the plaintiffs suffered a stroke ten days after the incident, which he attributed to the assault. Both plaintiffs alleged physical, emotional and

taking and denial of due process "fit squarely within the analysis developed in just compensation cases").

8

economic injuries.  The Tenth Circuit explained the difference between conduct that shocks the conscience under a Fourteenth Amendments inquiry, and conduct that is merely a tort under state law:

> What differentiates a constitutional transgression from an ordinary common law tort is a "level of executive abuse of power . . . that . . . shocks the conscience." . . .  In other words, the executive abuse represents "arbitrary action of government" and requires a showing of government officials "abusing their power, or employing it as an instrument of oppression." . . . While recognizing "no calibrated yard stick," id. at 847, 118 S.Ct. 1708, the Supreme Court instructs that the "constitutional concept of conscience shocking duplicates no traditional category of common-law fault. . . .

*Williams v. Berney*, 519 F.3d at 1220.  *Williams* went on to note:

> [a]n assault – standing alone– does not suffice to make out a constitutional substantive due process claim. But an assault under a stated threat, a threat the victim knows an assaulting government official has the authority to carry out, can separate the ordinary common law tort from the substantive due process claim.

519 F.3d at 1223.

The standard for judging a substantive due process claim is whether the challenged government action would "shock the conscience of federal judges." *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir.1995), cert. denied, 516 U.S. 1118, 116 S.Ct. 924, 133 L.Ed.2d 853 (1996) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 126, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 834, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998); *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 528-29 (10th Cir.1998).  To satisfy this standard, a plaintiff must do more than show that the government actor intentionally or recklessly caused  injury to the plaintiff by abusing or misusing government power.  *Livsey v. Salt Lake County*, 275 F.3d 952, 957 -958 (10th Cir. 2001). Instead, a plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.  The level of conduct required to satisfy this additional requirement

cannot be defined precisely, but must necessarily evolve over time from judgments as to the constitutionality of specific government conduct.

I agree with Defendants that the allegations in Counts III and IV arise from an ordinary motor vehicle accident.  Plaintiffs' contention has the potential of turning motor vehicle incidents involving government employees into federal lawsuits.[4]  A review of the case law considering what conduct does not shock the conscience indicates that Defendant Morfin's alleged conduct simply does not fit that category.  *Cmp*., *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) (death resulting from a high-speed pursuit does not shock the judicial conscience); *Cockrell v. Sparks*, 510 F.3d 1307 (11th Cir. 2007) (acts of deputy who shoved drunk inmate and caused him to fall and break his hip and wrist did not shock the conscience); *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230 (10th Cir. 2003) (social caseworkers did not shock the conscience of the court when they pushed and swore at minor child); *Universal Calvary Church v. City of New York*, 2000 WL 1538019, *42 (S.D.N.Y. 2000) (a single push causing "no more than minor injuries" does not shock the conscience); *Metcalf  v. Long*, 615 F.Supp. 1108 (D.C.Del., 1985) (where claimant suffered whiplash type injury and pinched nerve,court held that "where the injury is this minor, it is impossible to label Defendants' actions as conduct that 'shocks the conscience'. . . a mere assault and battery does not rise to the level of a constitutional violation")(excessive force case).

---

[4]  This is not to say that physical assault can not transcend ordinary state tort law. *Williams* cites to such an example in *Wudtke v. Davel*, 128 F.3d 1057, 1059 (7th Cir. 1997).  In that case, a superintendent's assault of a teacher was found to be conscience shocking when the superintendent "threatened that he would not assign her a classroom aide to alleviate her workload [she taught special education classes], that he would prevent the district from hiring [her husband] and that he would refuse to approve the renewal of her provisional special education license (without which she would lose her job) if she did not engage in sexual acts with him." *Williams* at p. 1223.

In this case, Plaintiffs allege that Defendant Morfin "caused the truck he was driving to strike Plaintiff Kimberlee Schmitz and pinned her between her vehicle and the County truck." She was "treated by a nurse and given a prescription."  Prop.Am.Compl., ¶ 24.  While not minimizing Plaintiff Kimberly Schmitz' alleged injuries, my conscience is not shocked by these factual allegations, and thus, they do not present a federal § 1983 claim.

A proposed amendment to a complaint is futile if the complaint, as amended, would be subject to dismissal.  *Lind v. Aetna Health, Inc.*, 466 F.3d 1195, 1199 (10th Cir. 2006). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Id.* To determine whether a proposed amendment is futile, the court must analyze the proposed amendment as if it were a Rule 12(b)(6) motion. *Sheldon v. Vermonty,* 204 F.R.D. 679, 682 (D. Kan. 2002). Because none of the claims in the proposed amended complaint asserts a viable basis for federal jurisdiction, those claims would be subject to dismissal as federal claims. Therefore, Plaintiffs' motion to amend is denied.

**III.    Motion for Stay**

In light of the Court's findings, this action will be dismissed.  Accordingly, Defendants' motion for protective order and stay is unnecessary and shall be denied as moot.

**Conclusion**

In sum, I find and conclude that none of the claims in either the original or the proposed amended complaint asserts a viable basis for federal jurisdiction.  Thus, Plaintiff's motion to amend is denied as futile, and this action must be dismissed for lack of subject matter jurisdiction.  Further, Defendants' motion for stay is denied as moot in light of the Court's other findings.

11

**THEREFORE, IT IS ORDERED** that Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (**Doc. 25**) is hereby GRANTED for reasons described in this Memorandum Opinion and Order and that this action is DISMISSED for lack of subject matter jurisdiction;

**FURTHER, IT IS ORDERED** that Plaintiffs' Motion for Leave to Amend Complaint (**Doc. 34**) is hereby DENIED for reasons described in this Memorandum Opinion and Order; and

**FINALLY, IT IS ORDERED** that Defendants' Motion for Protective Order and Stay of Discovery Pending Resolution of the Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction (**Doc. 38**) is hereby DENIED AS MOOT based on the Court's findings on the other motions.

_____
UNITED STATES DISTRICT JUDGE